Roger R. SILTMAN, Jr., Relator,

v.

PARTRIDGE RIVER, INC. and State
Fund Mutual Insurance Co.,
Respondents.

No. C6–94–1213.

Supreme Court of Minnesota.

Sept. 14, 1994.

Peterson, Sage, Cuzzo & Graves, P.A., Michael J. Cuzzo, Duluth, for relator.

Felhaber, Larson, Fenlon & Vogt, P.A., Edward Q. Cassidy, Minneapolis, for respondents.

*AMENDED ORDER*

KEITH, Chief Justice.

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that the decision of the Workers' Compensation Court of Appeals filed May 17, 1994 be, and the same is, affirmed as modified.

In the spring of 1991, Roger Siltman began working as a laborer and woodworking machine operator for Partridge River, Inc. Sometime after that, Siltman enrolled at the Eveleth Technical College in a millwright/maintenance mechanic program in order to increase his earnings. On January 28, 1992, he sustained a compensable low back injury. Siltman continued his schooling on the assumption he would have total recovery, but ultimately it was determined he would not be able to return to preinjury employment or work as a millwright/maintenance mechanic. Siltman nevertheless completed the millwright/maintenance mechanic program with a 3.333 GPA as he had only 2 or 3 months left and was on grant money. He then enrolled in a supervisory management program at Brainerd/Staples Regional Technical College and found work at a convenience store.

Siltman sought rehabilitation services for purposes of exploring retraining. Partridge River's workers' compensation liability insurer, State Fund Mutual Insurance Company, took the position that where Siltman's preinjury and postinjury wages were nearly the same, he was not entitled to retraining because he had no impaired earning capacity.

At the hearing, Siltman's vocational expert testified that Siltman's earning capacity was impaired where Siltman had successfully completed training as a millwright/maintenance mechanic, where his school had a placement rate of around 79% for millwright/maintenance mechanics, and where the wages of a millwright/maintenance mechanic averaged around $11/hour—substantially higher than his preinjury and postinjury wages of around $5.25 to $5.50/hour. State Fund Mutual argued *Jellum v. McGough Constr. Co., Inc.,* 479 N.W.2d 718 (Minn.1992) barred resort to work as a millwright/maintenance mechanic in establishing impaired earning capacity. The compensation judge awarded rehabilitation benefits, including authorization for retraining evaluation. The WCCA affirmed, but in reliance on *Jellum,* effectively directed that the scope of any retraining evaluation be limited to developing a plan that would return Siltman to his preinjury wage.

The issue is whether the employee is entitled to evaluation for retraining, not the scope of the evaluation. Retraining may be "necessary" if it "will be likely to restore impaired capacity to earn a livelihood; and earning capacity may be impaired if the employee's injury prevents him or her from returning to the former employment or from securing advancement in that employment." *Leahy v. St. Mary's Hosp.,* 339 N.W.2d 265, 268 (Minn.1983). Moreover, Minn.Stat. § 176.102, subd. 1(b) (1992) provides, in part, that:

> Rehabilitation to a job with a higher economic status than would have occurred without disability is permitted if it can be demonstrated that this rehabilitation is necessary to increase the likelihood of reemployment. Economic status is to be measured not only by opportunity for immediate income but also by opportunity for future income.

In this case, there was a substantial evidentiary basis for the determination that Siltman has an impaired earning capacity and is therefore entitled to evaluation for purposes of developing a retraining plan. Arguments based on *Jellum,* a case concerning the calculation of wage loss benefits, are inapposite here.

Employee is awarded $400 in attorney fees.

STRINGER, J., took no part in the consideration or decision of this case.